# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WOODS COVE, III, LLC, et al., | ) | CASE NO. 5:16-cv-1016 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| CITY OF AKRON, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are the following motions: motion for summary judgment filed by defendant City of Akron (the "City")[1] (Doc. No. 46 ("Def.Mot.")[2]); and motion for partial summary judgment filed by plaintiffs Woods Cove III, LLC ("WC III"), Woods Cove II, LLC ("WC II"), and Lakeside REO Ventures, LLC ("Lakeside") (collectively, "plaintiffs") (Doc. No. 49 ("Pl.Mot.")[3]). For the reasons set forth herein, the City's motion for summary judgment is granted in part and denied in part; plaintiffs' motion for partial summary judgment is denied.

## I. BACKGROUND

All three plaintiffs are limited liability companies principally located in Pasadena, California. Both WC II and WC III are in the business of purchasing municipal tax lien certificates. Lakeside is in the business of selling, renovating, rehabilitating and renting properties located in many states, including Ohio and, in particular, in Summit County, Ohio, through tax liens acquired

---

[1] The City is the only remaining defendant. Two other defendants (Summit County and Kristen Scalise) were voluntarily dismissed on May 3, 2017. (*See* Doc. No. 32.)

[2] Some exhibits to the City's motion were filed separately. (Doc. No. 58.) Plaintiffs filed their opposition (Doc. No. 51 ("Pl.Opp'n")) and the City filed a reply (Doc. No. 55 ("Def.Reply")), with exhibits to the reply filed separately (Doc. No. 60.)

[3] The City filed its opposition (Doc. No. 52 ("Def.Opp'n")), along with separately filed exhibits (Doc. No. 59), and plaintiffs filed a reply (Doc. No. 54 ("Pl.Reply")).

by WC II and WC III. Lakeside shares common ownership of the tax liens with WC II and WC III, and title to the properties acquired through the tax lien certificates is held by Lakeside. (Doc. No. 21, First Amended Complaint ("FAC") ¶¶ 4, 5, 6.)

Plaintiffs assert claims under 42 U.S.C. § 1983, the United States Constitution, and the Ohio Constitution. They claim that the City's demolition of structures on properties in which they have an economic interest constituted an unconstitutional taking, a denial of their equal protection rights, and a violation of both substantive and procedural due process. They further assert several claims based purely on state law, including unjust enrichment, violation of municipal ordinances, and unconstitutional exercise of home rule powers.[4]

Underlying all the claims are property interests that plaintiffs assert by virtue of their having purchased from Summit County, through various public contracts, municipal tax lien certificates encumbering 37 real properties[5] within the City of Akron.[6] Demolition of the structures on 13 of these properties was ordered by the Housing Appeals Board ("HAB") and 23 additional demolitions occurred pursuant to a Waiver Demolition Program ("WDP") operated by the City. Although the structure located on one final property (1141 Laurel Avenue) was demolished, it was not done by the City, a fact challenged by plaintiffs, but supported by the record. (*See* Doc. No. 58-2 at 889-901.)

---

[4] The FAC also asserts state law claims for breach of contract, conversion, and tortious interference with contract. These claims have been abandoned by plaintiffs. (*See* Pl.Opp'n at 454.) (All page citations herein are to the page ID# assigned by CMECF.)

[5] The FAC lists a large number of properties (FAC ¶ 13), but only 37 of them remain at issue, all the others having been voluntarily dismissed from the action. (*See* Doc. Nos. 32, 41, 62.)

[6] Defendant has supplied certified copies of the tax certificate for each of the 37 properties. (*See* Doc. No. 58-1.)

## A.  HAB Demolitions

Jodie Forester, a supervisor in the Housing Division of the Department of Neighborhood Assistance for the City, filed an affidavit in support of the City's motion. (Doc. No. 46-1, Affidavit of Jodie Forester dated 12/7/17 ("Forester Aff. 1")[7].) Forester's duties include, *inter alia*, serving as a housing inspector, supervising other housing inspectors, attending meetings of the HAB, requesting and reviewing title research in preparation for HAB meetings, causing the agenda of upcoming meetings and the outcome of past meetings of the HAB to be published in the *Akron Beacon Journal*, presenting properties to the HAB for consideration for demolition, preparing a synopsis of each property's history for use at HAB hearings, providing notice to interested parties of hearings before and decisions of the HAB, and maintaining records of the Housing Division and the HAB. (*Id.* ¶ 3.)

Forester also serves as the custodian of the records of the Housing Division and the HAB pertaining to housing complaints, inspection records, photographs, correspondence, proceedings of the HAB including notices to interested parties before and after meetings and hearings, recorded affidavits of condemnation, and other miscellaneous records (collectively referred to as a "Housing File"). (*Id.*) Each Housing File is a public record for purposes of Ohio Rev. Code § 149.43, and is subject to inspection and copying by persons who make a specific request. (*Id.*) Housing Files are maintained by reference to the address of the subject property. (*Id.* ¶ 4.) This address identifier is preferred because it remains the same even if ownership, occupancy status, or lienholder information changes. (*Id.*)[8]

---

[7] This affidavit is supplemented by another filed in support of the City's opposition to plaintiffs' motion. (*See* Doc. No. 52-3, Affidavit of Jodie Forester dated 1/5/18 ("Forester Aff. 2").)

[8] For purposes of this lawsuit, Forester has supplied true and accurate copies of the Housing File for each of the 13 properties demolished by the City, and for the property at 1141 Laurel. (Forester Aff. 1 ¶ 5; *see also* Doc. No. 58-2.)

A Housing File remains "open" from the time a complaint is found to be justified due to the existence of violations until the time the file is marked "complied" when the violations are deemed by a housing inspector to have been corrected or otherwise no longer in existence. (*Id.*) Examples of situations where a property is marked "complied" include: (1) when repairs have been completed so that no violations remain, as determined by a housing inspector; or (2) when a property has been demolished, regardless of the means or cause. (*Id.*)

The HAB meets on the third Tuesday of every month. (*Id.* ¶ 7.) Prior to each meeting, Forester engages in the following procedure, from which she never deviates: (1) preparation of a list of properties that will come before the HAB at the meeting; (2) between 30 and 35 days before each meeting, supplying this list of properties to the title company on contract with the City for performance of title research on each property; (3) between 16 and 21 days before each meeting, receiving information prepared by the title company regarding ownership and holders of liens that appear of public record in the Fiscal Office, Recorders Division, Summit County, Ohio and the Common Pleas Court of Summit County, Ohio for each property on the prepared list; (4) notifying every identified owner and lienholder of the upcoming HAB meeting by notice (dated for the date mailed and personally signed by Forester) sent to each of them at the addresses provided by the title company, by means of certified mail, return receipt requested, and by ordinary U.S. mail; in the case of lienholders, Forester sends notice when she receives from the title company a photocopy of the recorded certificate evidencing a lien interest and including a business address; (5) posting a notice of the HAB hearing at each property (dated for the date posted) notifying that the property will be considered for demolition; and (6) causing a notice to be published in the *Akron Beacon Journal*, a newspaper of general circulation in Akron, Ohio, announcing the date, time, and location of the HAB meeting, and the address of each property to be considered at that

meeting; this is always published on the Saturday that falls 10 days before the HAB meeting, and Forester always verifies that the notice actually is published in the newspaper. (*Id.* ¶ 7.)

After each meeting, Forester engages in the following procedure, from which she never deviates, for all properties for which demolition has been ordered: (1) notifying every identified owner and lienholder of the HAB's decision, by letter to the address provided to her by the title company, by certified mail, return receipt requested, and by ordinary U.S. mail; each letter is dated for the date it was sent and personally signed by Forester; (2) posting the HAB's decision at each property ordered demolished (with the posting dated for the date of posting); (3) causing a notice of the HAB's decision, including a list of addresses of properties ordered demolished, to be published in the *Akron Beacon Journal* on the Saturday following the meeting, that is, four days after the HAB decision. (*Id.* ¶ 8.)

After the HAB decision, Forester always reviews, signs, and records an Affidavit of Condemnation at the Summit County Fiscal Office. Each affidavit includes the address and parcel number of the property ordered demolished, and the date of the HAB's order. (*Id.* ¶ 9.)

Forester supplied Table H-1 (Doc. No. 46-1 at 402), summarizing key information contained in the Housing Files supplied for each property: the permanent parcel number assigned to each by the Summit County Fiscal Office; the street address of each; the date the HAB hearing was conducted and the demolition decision made; the date Forester posted notice at the property that a hearing on demolition would be conducted; the date she requested research by the title company; an indication of whether or not the title company found a recorded tax lien certificate; the date Forester posted notice at the property that the HAB had ordered demolition; and the date she recorded the affidavit of condemnation for the property at the Fiscal Office of Summit County, Ohio, Recorder's Division. (*Id.* ¶ 10.)

Of the 37 properties listed in Table H-1, only the 13 that have information recorded in every column were presented to the HAB for a demolition determination. (*Id.* ¶ 11.) Those same 13 were ordered demolished by the HAB. (*Id.* ¶ 12.) Forester states that none of the 13 included a copy of a recorded tax lien certificate indicating that plaintiffs had an interest in the property;[9] therefore, she had no reason to notify plaintiffs of any hearings, and she did not send any such notice. (*Id.*) Of the 13 properties demolished pursuant to HAB order, plaintiffs administratively appealed none of those orders, a right afforded any party adversely affected by the HAB's decision. (*Id.* ¶ 16, citing "the Housing Code and R.C. Chapter 2506.")

The City also submitted the affidavit of Cinda Bourgeau ("Bourgeau"), an independent contractor working in the Civil Division of the City's Law Department. (Doc. No. 46-3, Affidavit of Cinda Bourgeau ("Bourgeau Aff.").) As part of her duties, Bourgeau obtained certified copies of tax lien certificates from the Fiscal Office of Summit County, Ohio. Each of the 37 properties at issue here is listed in Table L-1, showing its parcel number and street address, along with information about its initial lien certificate (*i.e.*, the document number, the purchase date, and the record date). (*Id.* ¶¶ 2, 4, 5.)

Execution of demolition orders is coordinated by Beth Diefendorf ("Diefendorf"), who currently holds the position of Community Development Supervisor within the Department of Neighborhood Assistance for the City. (Doc. No. 46-2, Affidavit of Beth Diefendorf ("Diefendorf Aff.") ¶ 1.) Diefendorf has performed the same duties on behalf of the City with respect to

---

[9] As discussed, *infra* at Section III, D. 1, for two of these properties, a recorded lien certificate should have been found by the title searcher.

properties to be demolished from 2009 to the present. (*Id.* ¶ 2.)[10] Her duties include coordinating all demolitions to be performed by contractors on behalf of the City, whether by order of the HAB, due to an emergency order by the Superintendent of Building Inspection,[11] or under the WDP described below. This entails disconnection of utilities, assessment and abatement (if necessary) of asbestos, release of property adequately prepared for demolition, and confirmation that the demolition has been performed. Diefendorf supervises two field inspectors who assist her with these tasks. (*Id.* ¶¶ 3, 8.)

## B.    Waiver Demolition Program (WDP)

The remaining 24 properties in Table H-1 were not ordered demolished by the HAB. (Forester Aff. 1 ¶ 13.) Rather, 23 of the 24[12] were demolished pursuant to a City program operated at the time that permitted property owners to request that the City demolish their property. The WDP was overseen by Diefendorf, who never deviated from the following process in her performance of this oversight: upon receipt of a request from a property owner that his/her property be demolished, Diefendorf (1) reviewed the waiver form for completeness; (2) requested that a title search be performed by the City's contractor to confirm that the person requesting demolition was the owner; (3) determined that all steps preliminary to demolition had been performed; (4) released the property to a contractor for demolition; (5) confirmed that the demolition had been

---

[10] From 2001 to 2016, Diefendorf served within the Department of Planning and Urban Development. In December 2016, her position was reclassified under the Department of Neighborhood Assistance. Her duties at all relevant times were the same. (Diefendorf Aff. ¶¶ 1, 2.)

[11] None of the demolitions at issue in this case were the result of an emergency order. (Diefendorf Aff. ¶ 7.)

[12] Notably, the housing inspector's notes contained in the Housing File for the property at 1141 Laurel Avenue (in the third row of Table H-1) indicate that there was a serious fire at that property. The housing inspector had ordered repair of the fire damage, but the last entry of that Housing File indicates that the structure was "self-razed" and the file was marked "complied," meaning the file was closed. (Forester Aff. 1 ¶ 14.) Plaintiffs question the City's assertion that this property was not demolished by the City. (*See* Pl.Opp'n at 456.) But the City's records, unrefuted by plaintiffs, prove otherwise.

performed; and (5) maintained the records documenting these steps. (Diefendorf Aff. ¶ 9.) Her duties with respect to demolitions do not include notifying owners and/or lienholders that the City will engage a contractor to perform a demolition. (*Id.* ¶ 11.) In fact, for a waiver demolition, the owner of the property promises to notify all lienholders. (*Id.*; *see, e.g.*, Doc. No. 58-3 at 1013-14, Demolition Waiver for 1138 Big Falls Avenue.)

Diefendorf also serves as custodian of the records pertaining to all demolition requests, preparations, and confirmations, which are referred to as "Planning Files" and are organized with reference to the address of each property. (Diefendorf Aff. ¶¶ 3-4.)[13] These Planning Files are public records and are subject to inspection and copying by anyone making a specific request. (*Id.* ¶ 5.) Diefendorf has submitted Table P-1 (Doc. No. 46-2 at 410), identifying when each of the 37 properties was razed and when waivers, if any, were signed. (*See Id.* ¶ 12.)

## II. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

---

[13] For purposes of this lawsuit, Diefendorf has supplied true and accurate copies of portions of the Planning Files for 36 of the 37 properties at issue, referred to as "Planning Records." (Diefendorf Aff. ¶¶ 4, 5; *see also* Doc. No. 58-3.) There is no Planning File for 1141 Laurel Avenue. This further suggests that the City did not demolish this property. (*See* Diefendorf Aff. ¶ 10.)

"The standard of review is the same when reviewing cross-motions for summary judgment, but the court must be careful to 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 754-55 (6th Cir. 2015) (quoting *Taft Broad Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp.*, 477 U.S. at 322.

In the end, "[s]ummary judgment is appropriate if, examining the record and drawing all inferences in a light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 399 (6th Cir. 2004) (citations omitted).

### III. DISCUSSION

The City moves for summary judgment on all of plaintiffs' claims; plaintiffs formally move for summary judgment only on Count I (violation of procedural due process), Count V

(unconstitutional taking), and Count XI (for permanent injunction); however, their motion also appears to raise arguments relating to Count II (substantive due process).[14]

## A. Ripeness -- Taking Claim (Count V) and Due Process Claims (Counts I and II)

### 1. Taking Claim/Wrongful Demolition

The City asserts that plaintiffs' taking claim brought under the Fifth Amendment to the U.S. Constitution[15] and Art. I § 19 of the Ohio Constitution (Count V) is not ripe because plaintiffs have not availed themselves of Ohio's procedures for seeking just compensation.[16] If this is true, the City would, at the very least, be entitled to dismissal of Count V because the Court would lack subject matter jurisdiction over the claim. *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) ("If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.") (quoting *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992) (further citation omitted)). Further, to the extent plaintiffs' motion seeks summary judgment on Count V, it would be rendered moot.[17]

---

[14] As already noted, in plaintiffs' opposition to the City's motion, plaintiffs expressly abandoned Count IV (breach of contract), Count VI (conversion), and Count VIII (tortious interference with contract).

[15] The Fifth Amendment "applies to the States as well as the Federal Government." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 306 n.1, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002) (citations omitted). Unlike the other constitutional claims, this count of the complaint is not brought under § 1983, but rather directly under the Fifth Amendment (and the Ohio Constitution). But the Sixth Circuit "ha[s] long held that § 1983 provides the exclusive remedy for constitutional violations." *Foster v. Mich.*, 573 F. App'x 377, 391 (6th Cir. 2014) (citing *Thomas v. Shipka*, 818 F.2d 496, 503 (6th Cir. 1987), *vacated on other grounds*, 488 U.S. 1036, 109 S. Ct. 859, 102 L. Ed. 2d 984 (1989)). Therefore, to the extent plaintiffs are attempting to assert a direct constitutional claim under the Fifth Amendment, that is grounds enough for failure of the claim. Even if the taking claim were construed as being brought under § 1983, it would be subject to the statute of limitations discussion, *infra*.

[16] The City made this argument in an earlier motion to dismiss, but is now rearguing ripeness both to preserve it for appeal and to address concerns articulated by the Court in its ruling on the motion to dismiss. (Def.Mot. at 365 n.1.)

[17] In their opposition brief, plaintiffs disingenuously assert that the City did not move for summary judgment on their "wrongful demolition" claim in Count V, but only on the taking claim. (Pl.Opp'n at 471.) Count V encompasses *both* a federal constitutional taking claim (Fifth Amendment) and a claim of "wrongful demolition" under Ohio's constitutional provision addressing eminent domain (Ohio Const. art. I, § 19). Both generally prohibit taking private property for public use without just compensation. *First N. Corp. v. Olmsted Falls Bd. of Zoning Appeals*, 8 N.E.3d 971, 983 (Ohio Ct. App. 2014) ("both the Ohio Constitution and the Fifth Amendment to the United States Constitution … generally applies to the direct, physical appropriation of private property [and to circumstances where] …use of such property was restricted by regulation") (citations omitted). The arguments and reasoning are the same for both,

The City also argues that Count V fails as a matter of law because the properties at issue were public nuisances and, since a property owner does not have a compensable interest in a public nuisance, plaintiff cannot establish that a taking occurred. (Def.Mot. at 369.)

"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985) (citation omitted). "Thus, even after a taking, the government has not violated the Constitution until it refuses to compensate the owner." *Hensley v. City of Columbus*, 557 F.3d 693, 695-96 (6th Cir. 2009) (citing *Williamson*, 473 U.S. at 194-95 & n.13). "A federal court may therefore hear a takings claim only after two criteria are met: (1) the plaintiff must demonstrate that he or she received a 'final decision' from the relevant government; and (2) the plaintiff must have sought 'compensation through the procedures the State has provided for doing so[.]'" *Hensley*, 557 F.3d at 696 (quoting *Williamson*, 473 U.S. at 186-87, 194) (internal citations omitted); *see also Norwood v. Horney*, 853 N.E.2d 1115, 1130 (Ohio 2006) ("The binary constitutional inquiry in an eminent-domain case is whether both the compensation requirement and the public-use tests were satisfied."). "With a 'physical taking,' the taking itself is viewed as the final action because, once the property's value has been allegedly destroyed, there is nothing else to do." *Hensley*, 557 F.3d at 696 (citation omitted).

The City focuses on the second criterion, arguing that "'if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation . . . until it has used the procedure and been denied just compensation.'" (Def.Mot. at 366, quoting *Hensley*,

and the Court's discussion herein of the Fifth Amendment encompasses the Ohio constitutional claim as well. The Court also notes that Count V cannot be construed to state a tort claim for wrongful demolition and, even if it were so construed, the City would be immune from tort liability. *See Englewood v. Turner*, 897 N.E.2d 213, 218 (Ohio Ct. App. 2008) ("After R.C. Chapter 2744 was adopted, courts generally refused to allow recovery in tort for wrongful demolition against political subdivisions.") (citations omitted).

557 F.3d at 696 (further citations omitted).) The City argues that the Sixth Circuit has held that Ohio's mandamus action constitutes a "reasonable, certain, and adequate procedure[]" as contemplated by *Williamson* (*id.*, citing *Coles v. Granville*, 448 F.3d 853, 861-65 (6th Cir. 2006)), and that the Ohio Supreme Court "has consistently recognized the mandamus action as the proper method for pursuing an alleged takings claim." (*Id.* at 367, citing *Cuyahoga Lakefront Land, L.L.C. v. Cleveland*, 71 N.E. 2d 1016, 1018 (Ohio 2016) (quoting *State ex rel. Doner v. Zody*, 958 N.E.2d 1235, 1246 (Ohio 2011) ("Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.") (further quotation marks and citation omitted)).)

In opposition, plaintiffs argue that the "appropriations" at issue here are a "carve out" from Ohio's statutory procedure,[18] under which "no appropriation action is required in instances where the municipality sets a proceeding in motion for abatement pursuant to its municipal charter or ordinance." (Pl.Opp'n at 458.) As a result, plaintiffs argue, since their properties were razed as nuisances pursuant to a municipal ordinance, they may not legally maintain a mandamus action and, further, whatever limited appeal may have been available under Ohio Rev. Code § 2506.04 would not allow for an award of damages.[19] (*Id.* at 460; *see also Palco Invest., Inc. v. Springfield*,

---

[18] Ohio Rev. Code § 163.02 provides:

> (A) All appropriations of real property shall be made pursuant to sections 163.01 to 163.22 of the Revised Code, except as otherwise provided in this section, as otherwise provided to abate a health nuisance or because of a public exigency as provided in division (B) of section 307.08, 6101.181, 6115.221, 6117.39, or 6119.11 or division (D) of section 504.19 of the Revised Code, or as otherwise provided to abate a health nuisance or because of a public exigency as provided in a municipal charter or ordinance.

[19] Ohio Rev. Code § 2506.04 only permits a court reviewing an administrative decision to "affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court."

No. 2004 CA 80, 2005 WL 3502142, at * 4 (Ohio Ct. App. Dec. 23, 2005) (§ 2506.04 "does not provide jurisdiction for the court to determine money damages.") (citation omitted).)[20]

Although the City advances lack of ripeness, it is clear to the Court, based on plaintiffs' own allegations and admissions, that the threshold question is whether there was a compensable taking. Notably, plaintiffs allege in their complaint and argue in their briefs that the City demolished their properties pursuant to the exercise of the City's police power to abate a public nuisance. (FAC ¶ 75; Pl.Opp'n at 458; *see also* Pl.Mot. at 439-40.) Compensation for the taking of property is not required where a government entity legitimately exercises its police power to abate a nuisance. *Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1022-24, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)) (citation omitted); *see also Hendler v. United States*, 38 Fed. Cl. 611, 615 (1997) ("Because a property owner does not have a right to use his property in a manner harmful to public health or safety, the government's exercise of its powers to protect public health or safety does not constitute a compensable taking of any of the owner's property rights.") (citing, *inter alia*, *Lucas, supra*).

Plaintiffs, in their motion, argue that the "plain language [of the Fifth Amendment] requires the payment of compensation whenever the government acquires private property for a public purpose, whether the acquisition is the result of a condemnation proceeding or a physical appropriation." (Pl.Mot. at 439, citing[21] *Tahoe-Sierra Pres. Council*, 535 U.S. at 321.) They claim

---

[20] Plaintiffs urge reliance on *Englewood, supra*, arguing that it distinguished dictum in *Palco Investments, supra*, that was used to suggest that a mandamus action is a prerequisite to a taking action. *Englewood* pointed out that the statement about mandamus in *Palco Investments* was in the context of an administrative appeal under § 2506.04 and that *Palco Investments* held only that damages were unavailable in that context. In plaintiffs' view, they have no adequate remedy available to them under Ohio law and are permitted to pursue their constitutional taking claim here without exhaustion of any kind.

[21] Plaintiffs are actually directly *quoting* from *Tahoe-Sierra Preservation Council*, but, although acknowledging the source, they fail to include quotation marks.

that, at least for the properties in the WDP, the City "did not abate a nuisance by exercising its police power with notice and opportunity to challenge the City's intended action. Instead, it induced the property owner of the vacant properties to allow it to circumvent its established procedures set by ordinance and, in turn, denied Plaintiffs any and all ability to protect their property interests in the covered property." (*Id.* at 439-40.) They further assert, without additional explanation, that "the City ignored its duties under the HAB program." (*Id.* at 440.)

Plaintiffs' arguments are more in the nature of Fourteenth Amendment due process arguments than Fifth Amendment taking arguments and, as such, are discussed later in this opinion. From the standpoint of the *Fifth* Amendment, because the properties were demolished to abate public nuisances (some adjudicated administratively and others conceded by the owners), there was no compensable taking. Therefore, a mandamus proceeding is not required, and ripeness is a non-issue as to this claim.

The City is entitled to summary judgment on plaintiffs' fifth claim because plaintiffs are unable to establish a compensable taking under the Fifth Amendment and, in any event, are not entitled to pursue the claim directly outside of § 1983. To that extent, the City's motion for summary judgment is granted and plaintiffs' motion for partial summary judgment is denied.

### 2. Ripeness of Due Process Claims

The City further asserts that plaintiffs' procedural and substantive due process claims brought under 42 U.S.C. § 1983 and Art. I § 16 of the Ohio Constitution (Counts I and II) are ancillary to the taking claim and are, therefore, subject to the same ripeness requirements.[22]

---

[22] Plaintiffs argue in opposition that their procedural due process claims are separate and distinct from their taking claim -- that the denial of due process "itself created an immediate, concrete injury" to them. (Pl.Opp'n at 465, citing *J-II Enter., LLC v. Bd. of Comm'rs of Warren Cty., OH*, 135 F. App'x 804 (6th Cir. 2005).) In *J-II Enterprises*, the court of appeals explained:

Since the Court has rejected the existence of a compensable taking, it need not consider whether the due process claims are ancillary to the taking claim. Further, since there is no requirement that a party exhaust adequate state-law remedies prior to filing an action under § 1983, *Patsy v. Fla. Bd. of Regents*, 457 U.S. 496, 516, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982), ripeness is not an issue. Therefore, the due process claims will be addressed on their merits, *infra*.[23]

**B.      Timeliness of § 1983 Claims**

The City argues that, as to 13 of the properties at issue, because this lawsuit was filed on April 27, 2016, all of the § 1983 causes of action in Counts I, II, and III that accrued prior to April 27, 2014 are time-barred by the two-year statute of limitations. (Def.Mot. at 370-71, citing cases.)

---

A procedural due process claim is subject to the same ripeness requirement as a just compensation claim, unless the plaintiff alleges harm flowing directly from a denial of due process. In *Nasierowski Bros. Investment Co. v. City of Sterling Heights,* this court held that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency." 949 F.2d 890, 894 (6th Cir.1991). But this court later limited *Nasierowski's* holding: "*Nasierowski* appears to stand merely for the sensible proposition that while different circumstances may produce different results, the final decision rule does not apply when the denial of procedural due process itself creates an injury." *Bigelow,* 970 F.2d at 160; *see also Nasierowski Bros. Inv. Co.,* 949 F.2d at 899 (Martin, J., concurring) ("[W]e retain the finality requirements for procedural due process claims where we cannot find a single, concrete separate injury or where the procedural due process claim is in reality an adjunct to a taking or other constitutional claim.").

*Id.* at 806-07. The court also noted that "[a] substantive due process claim can be ripe despite the unripenesss of a just compensation claim." *Id.* at 807 (citation omitted).

[23] Of course, plaintiffs' own insistence that their due process claims are distinct from their taking claim has implications for the measure of damages, should there be any. The Supreme Court has recognized that damages are available under § 1983 for actions "found . . . to have been violative of . . . constitutional rights *and to have caused compensable injury. . . .*" *Wood v. Strickland*, 420 U.S. 308, 319, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975) (emphasis added). Therefore, plaintiffs will ultimately need to prove that the lack of procedure itself caused any injury they suffered, or put differently, that if they had received the process they were due, they would not have been injured. The Supreme Court has held that, if an action complained of (*e.g.*, the property deprivation herein) would have resulted even *if* appropriate process had been used, plaintiffs would not be entitled to recover damages, because that would "constitute a windfall, rather than compensation[.]" *Carey v. Piphus*, 435 U.S. 247, 259, 260, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) (citations omitted). The City, in fact, makes this very argument, claiming that the properties were nuisances and would have been demolished even if plaintiffs had notice. (Def.Mot. at 375.) That is, very likely, a question of fact.

In opposition, plaintiffs assert that the four-year statute of limitations in Ohio Rev. Code § 2305.09 "applie[s] to takings claims under Ohio law[.]" (Pl.Opp'n at 466, citing *McNamara v. City of Rittman*, 473 F.3d 633, 637 n.1 (6th Cir. 2007)[24].) But § 1983 claims are not taking claims; they are personal injury claims. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) ("section 1983 claims [are] best characterized as tort actions for the recovery of damages for personal injuries and federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought.") (citing *Wilson*, 471 U.S. at 275-76; *Owens v. Okure*, 488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989); *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989)). In *Banks*, the court of appeals noted that it has "squarely rejected attempts to get around" the two-year statute of limitations. *Id.* (citing *LRL Props. v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (rejecting application of Ohio Rev. Code § 2305.09); *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519-20 (6th Cir. 1997) (same)).

Accordingly, a two-year statute of limitations applies and, based on unrefuted demolition dates identified in Table P-1 and shown parenthetically below, all § 1983 claims relating to the following properties are time-barred because they accrued outside the two-year period preceding the filing of the complaint:

---

[24] Plaintiff's reliance upon dicta in *McNamara* suggesting a four-year statute of limitations for "takings actions brought after 2004" is likely misplaced. In *Wilson v. Garcia*, 471 U.S. 261, 274, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985), the Court expressly rejected any suggestion that "the choice of the statute of limitations [should] depend upon the particular facts or the precise legal theory of each [§ 1983] claim[.]" The Court "conclude[d] that [§ 1983] is fairly construed as a directive to select, in each State, the *one* most appropriate statute of limitations for all § 1983 claims." *Id.* at 275 (emphasis added).

**8 HAB properties (of 13)**:                    **5 WDP properties (of 23)**:

1016 Kling St. (12/12/2013)                    1164 Mt. Vernon (4/19/2013)
1372 Dewitt Dr. (6/1/2012)                     1531 Parkgate Ave. (10/21/2013)
2087 & 2089 SW 17th St. (4/9/2012)             155 S. Portage Path (6/28/2012)
2159 SW 12th St. (9/5/2012)                    214 Para Ave. (1/24/2012)
424 Barwell St. (12/12/2011)                   984 Bloomfield (7/24/2012)
763 Roselawn (3/5/2013)
797 Kling St. (3/26/2014)
88 Eber[25] Ave. (12/18/2013)

(Diefendorf Aff. ¶ 12 and Table P-1.) The City is entitled to summary judgment on all § 1983

claims relating to these 13 properties.

**C.      The City's Challenge to Affidavits of Matthew Morgan**

Before discussing the merits of the remaining summary judgment arguments, the Court

must first address the affidavits of Matthew Morgan ("Morgan") submitted by plaintiffs in support

of their briefs. (Doc. No. 49-2 ("Morgan Aff. 1"); Doc. No. 51-1 ("Morgan Aff. 2"); Doc. No. 54-

1 ("Morgan Aff. 3").) The City seeks to strike these affidavits.

Morgan is "a manager at Davenport Financial, LLC, [which is the] servicer for [plaintiffs]."

(Morgan Aff. 1 ¶ 1.) He claims to be "familiar with the business records maintained by Davenport

Financial, LLC in connection with this matter." (Morgan Aff. 1 ¶ 2; Morgan Aff. 2 ¶ 2; Morgan

Aff. 3 ¶ 2.) He further claims that he "personally reviewed the records provided by the City of

Akron in connection with this matter[.]" (Morgan Aff. 1 ¶ 2; Morgan Aff. 2 ¶ 2; Morgan Aff. 3 ¶

2.) On that basis, but without reference to any "records" in particular, Morgan asserts that "the

holder of the tax lien certificate, as identified in Exhibit 1 [to Morgan Aff. 1], did not receive notice

of the [HAB] hearing." (Morgan  Aff. 1 ¶ 4.) Nor did the lienholder, according to Morgan, "receive

a notice of the demolition." (*Id.* ¶ 6.) With respect to the WDP demolitions, Morgan asserts that

---

[25] The supportive materials sometimes mistakenly refer to this as "Ebner" Avenue.

"[t]he records provided by the City of Akron demonstrate that of the 23 parcels the City of Akron ignored its obligations under Sec. 150.051 of the Akron Code [as] [t]here is no indication that the City made findings of fact as to whether the dwelling was unfit for human purposes or whether it could be repaired as opposed to demolished." (*Id.* ¶ 8.) Morgan asserts that, after "review[ing] the Ohio County Treasurer's Manual" available online, he concludes that "a portion of the funds received from Woods Cove [by way of its "purchase of delinquent property taxes"] were [sic] subsequently transferred to the City of Akron." (Morgan Aff. 2 ¶¶ 3, 4.) Finally, Morgan asserts that "Davenport Financial, LLC regularly maintains records showing notices received from governmental entities, including the City of Akron, and [he] reviewed those records." (Morgan Aff. 3 ¶ 3.) Despite all of his declarations, Morgan makes reference to no specific records provided by the City, nor does he provide any of Davenport Financial's records to support his conclusory assertions.

The City argues that these affidavits should be stricken because (1) they are not made on personal knowledge; (2) they purport to provide legal conclusions with respect to Ohio's statutory scheme; and (3) they make assertions regarding facts about which Morgan is not competent to testify and for which there is no foundation. (Def.Reply at 734-35, citing Fed. R. Civ. P. 56(c)(4).)

In their reply brief supporting their own motion, plaintiffs argue that the assertions in Morgan's affidavits are "factual observation[s] based upon his review of the material provided by the City of Akron" and that "[t]he City has provided no evidence to refute the facts observed by Mr. Morgan." (Pl.Reply at 727.)

Under Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "An affidavit that does not

satisfy these requirements is subject to a motion to strike." *Enable Healthcare, Inc. v. Cleveland Quality Healthnet, LLC*, No. 1:16 CV 2395, 2017 WL 3116680, at *3 (N.D. Ohio July 20, 2017) (citing *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007)). However, "[i]n resolving a motion to strike, the Court should use 'a scalpel, not a butcher knife.'" *Id.* (quoting *Giles, supra*) (further citation omitted).

It is for the Court, not Morgan, to examine the record facts, interpret the law, and draw inferences and conclusions therefrom. The Court does not need Morgan to "review [] the material" provided by the City; that is the Court's role at the summary judgment stage.[26] In addition, the mere assertion by Morgan that he has "reviewed" records maintained by Davenport Financial says nothing without production of those records to support his assertions and conclusions; notably, no such records have been produced. For example, Morgan claims that Davenport Financial maintains records of notices received from government entities. Presumably, this is supposed to suggest that plaintiffs received no such notices from the City. Although the Court recognizes that Morgan would be unable to supply a document to prove that there was *no* notice, in order to give substance to his assertion, he should have supplied samples of notices that *were* received, even if from a different government entity. The Court is not required to simply take Morgan's word for anything; nor is the Court required to conclude that no notice was received simply because Davenport Financial purportedly maintains records of notices and Morgan purportedly reviewed them.

That said, the Court sees no need to strike the Morgan affidavits. Rather, it has merely accorded them the consideration to which they *may* be entitled under Rule 56. *See Roshen v. IBM*, No. 2:14-CV-260, 2016 WL 950363, at *8 (S.D. Ohio Mar. 14, 2016) (opting not to strike portions

---

[26] For good reason, plaintiffs do not claim that Morgan is an expert who would be allowed to opine on these matters.

of an affidavit that contain inadmissible statements, but noting that the court would consider only evidence that would be admissible under Rule 56).

## D. Procedural Due Process Claim (Count I, including *Monell*)

Both motions for summary judgment raise arguments relating to the merits of the § 1983 procedural due process claims. Plaintiffs raise particular arguments that both the HAB demolitions and the WDP itself constitute "policies and customs" of the City and, therefore, under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611(1978), the City can be held liable.[27] The City argues that plaintiffs are unable to establish any policy or custom and that, in any event, even if plaintiffs suffered a deprivation of process, they are not entitled to compensatory damages. If there is no underlying constitutional violation, there is no need to address the issue of policy or custom. Therefore, the Court will start by examining the merits of Count I.

"'A procedural due process claim requires a showing that the plaintiff has been deprived of a protected property interest without adequate process.'" *Agrawal v. Montemagno*, 574 F. App'x 570, 578 (6th Cir. 2014) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 432 (6th Cir. 2014)); *see Zinermon v. Burch*, 494 U.S. 113, 125-26, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). "A protected property interest is one to which a plaintiff has a legitimate claim of entitlement under state law." *Agrawal*, 574 F. App'x at 578 (citation omitted).

The property interest is not disputed here. What is disputed is the process that was afforded plaintiffs. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise

---

[27] The first amended complaint's only reference to policies or customs is in Count I.

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (citations omitted). "When the government knows not whom the forfeiture affects, constructive notice by publication suffices." *United States v. Erpenbeck*, 682 F.3d 472, 476 (6th Cir. 2012) (citing *Mullane*, 339 U.S. at 317). "But that is not true when the government knows or reasonably should know whom to notify. As to them, the government must attempt to provide direct notice of the proceeding." *Id.* (citing *Mullane*, 339 U.S. at 318-19) (further citation omitted).

### 1.    The HAB Demolitions

Looking first to the procedures used for the HAB demolitions, there were 13 properties in this category. Of these, eight are time-barred and need not be considered.[28] Of the remaining five properties,[29] the tax certificates for three of them (1333 S. Hawkins Ave., 189 Harter Ave., and 638 Hazel St.) were not recorded until *after* demolition was ordered and the affidavits of condemnation were recorded. Therefore, even though these three properties were actually demolished after the tax certificates were recorded, the demolition orders were already of record at the time the tax certificates were recorded, and, therefore, plaintiffs cannot reasonably argue that the City had any additional duty regarding notice. If plaintiffs wanted to challenge the demolition orders, they had several months within which to do so.[30] They apparently chose not to.

---

[28] These eight are: 1016 Kling Street, 1372 Dewitt Drive, 2087 & 2089 SW 17th Street, 2159 SW 12th Street, 424 Barwell Street, 763 Roselawn, 797 Kling Street, and 88 Eber Avenue (identified as "Ebner" in the tables).

[29] These five are: 1333 S. Hawkins Avenue, 1830 Ford Avenue, 189 Harter Avenue, 217 Denver Street, and 638 Hazel Street.

[30] The tax certificate for 1333 S. Hawkins Ave. was recorded on 11/14/2013 and the structure was demolished on 7/17/2014; 189 Harter Ave. was recorded on 11/14/2013 and demolished on 7/22/2014; and 638 Hazel St. was recorded on 11/14/2013 and demolished on 3/13/2015.

Only two of the five remaining HAB demolition properties present possible viable procedural due process claims. First, for 1830 Ford Ave., the tax certificate was already recorded (10/27/2011) well before the time the title search was ordered (1/17/2013) and the hearing posted (2/7/2013). For unexplained reasons, Table H-1 shows that the title search did not reveal this recorded lien. Therefore, no actual notice was sent to the lienholder of record, WW II. (*See* Doc. No. 49-2 at 447, Column 3.) For the other property -- 217 Denver St. -- the tax certificate was recorded at 11:15 a.m. on the very same day the title search was requested by the City (11/14/2013). (Doc. No. 58 at 787.) There is no way of knowing the exact time of day that these two events occurred chronologically. Arguably, if the search occurred after the recordation of the lien certificate, the lien certificate should have been discovered.[31]

On the other hand, notice of the HAB hearings was posted on each property (on 2/7/2013 for Ford and on 12/4/2013 for Denver) for the two scheduled hearings (2/19/2013 and 12/17/2013, respectively). The condemnation orders were also posted on each property (on 2/21/2013 for Ford and on 12/19/2013 for Denver), and the affidavits of condemnation were recorded (3/4/2013 and 1/24/2014, respectively). "The Constitution does not require . . . heroic efforts by the Government; it requires only that the Government's efforts be "reasonably calculated" to apprise a party of the pendency of the action." *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005) (citation and further quotation marks omitted). "The Constitution . . . judges the adequacy of notice from

---

[31] Plaintiffs, generally speaking, declare that they received no notices for the HAB hearings or demolitions. They support this assertion with Morgan's first affidavit attached to their motion. (Morgan Aff. 1 ¶ 4 ("I have reviewed the 37 parcels in this matter and the holder of the tax lien certificate . . . did not receive notice of the [HAB] hearing.").) But the City argues that plantiffs' reliance on this affidavit is misplaced because, although Morgan, without personal knowledge, attests to lack of notice across the board, the City possesses certified mail receipts that prove delivery of notice for many properties. (*See* Doc. No. 52-3, Forester Aff. 2 ¶ 3 and Table H-2.) The Court notes, however, that Table H-2 does not appear to include *any* of the properties at issue here. Apparently, the City is asking the Court to infer notice as to the HAB demolitions at issue here because it has proof of notice for other HAB demolitions not at issue. That is in the nature of a fact call, which the Court cannot make on summary judgment.

the perspective of the sender, not the recipient." *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013). The efforts outlined in Forester's affidavit show that the City's standard procedure is to mail notices to known interest-holders; the failure to send notices as to the Ford and Denver properties was likely a mere oversight due to failure of the title search to reveal these tax certificates -- a failure that may not even be attributable to the City for the latter property. But all the other postings and publications were made and, under the circumstances, that is enough. *See Ming Kuo Yang v. City of Wyoming, Mich.*, 793 F.3d 599, 603 (6th Cir. 2015) ("Posting notice is 'a singularly appropriate and effective way of ensuring that a person is actually apprised of proceedings against him.'") (quoting *Jones v. Flowers*, 547 U.S. 220, 236, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) (ellipses omitted)).[32] Plaintiffs could "be expected to check the property from time to time [as] [t]he law expects at least some diligence from the property owner [or interested party] as well as the local officials." *Karkoukli's*, 409 F.3d at 286; *see also Greene*, 456 U.S. at 451 ("[I]n most cases, the secure posting of a notice on the property … offer[s] that property owner sufficient warning of the pendency of proceedings possibly affecting his interests.").

Under the circumstances explained, which are unrefuted by plaintiffs, the Court concludes that the City did not violate plaintiffs' due process rights with respect to the HAB demolitions, and the City is entitled to summary judgment with respect to the § 1983 procedural due process claim relating to those properties.

---

[32] In its opposition to plaintiffs' motion, the City also properly argues that "there will always exist a period during which new interests in the property may be created or recorded that the City simply cannot discover prior to the hearing. In those cases, the City's secondary attempts to provide notice by posting at the property and publishing in the paper of record for the area are the best reasonable attempts at notice that the City can take." (Def.Opp'n at 492, citing *Greene v. Lindsey*, 456 U.S. 444, 453, 102 S. Ct. 1874, 72 L. Ed. 2d 249 (1982) ("[T]he reasonableness of the notice provided must be tested with reference to the existence of 'feasible and customary' alternatives and supplements to the form of notice chosen.") (citation omitted).)

## 2.     The Waiver Demolitions

In their motion for summary judgment, plaintiffs specifically challenge the City's WDP as having unconstitutionally deprived them of property interests. (Pl.Mot. at 433.) They claim this program "was adopted by city officials to utilize funds made available by the U.S. Dept. of Housing & Urban Development Community Development Funds[,]" that it was "geared toward the clearance of vacant and deteriorated structures including houses and commercial buildings[,]" and that "[u]nder the program, the City arranged for the demolition of the requested structure at no cost to the property owner." (*Id.* at 433-34.) Plaintiffs themselves point to nothing in the record to support any of these declarations, although they appear to be references to the City's own description of the WDP reflected in uncited documents attached to plaintiff's motion. (*See* Doc. No. 49-2.)[33]

In opposition, the City argues that the WDP was not part of its codified ordinances, that is, not an official policy of the City. Rather, "[i]t is a method or conduit to distribute federal Community Development Block Grant (CDBG) funds when the property owner agrees with the City to voluntarily demolish a structure." (Def.Opp'n at 494-95, citing Doc. No. 52-1, Affidavit of Helen Tomic ("Tomic Aff.") ¶ 4.) Pursuant to this agreement between the property owner and the City, CDBG funds are used to demolish the structure. The City also argues that plaintiffs fail to establish lack of notice with respect to the waiver demolitions, both challenging plaintiffs'

---

[33] The Court's Initial Standing Order requires that "[a]ll facts presented to the Court in any brief or memorandum setting forth a party's position with respect to a motion must be supported by pinpoint citations to the case record." (Doc. No. 3 at 41.) Plaintiffs' briefs fail rather uniformly in this regard. The non-moving party on any given issue has an affirmative duty to point out specific record citations that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The Court does not have "the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citation omitted).

reliance upon Morgan's affidavit as proof of lack of notice and asserting that the City's own records do not establish that notice was not given.

Because *Monell* requires a constitutional violation, the Court will address that issue first.

### a. The Waiver Demolition Program

Plaintiffs challenge the WDP in its entirety, and, in particular, the waiver form that was signed by each of the relevant property owners, claiming that "[i]t is self-evident that this waiver acted as a substitute for the City's adherence to the abatement of public nuisances procedure under City of Akron, Ohio Municipal Title 15, Section 150.051." (Pl.Mot. at 434; *see also* Doc. No. 58-3 (including copies of the signed waivers).) Plaintiffs argue that, instead of notifying lienholders such as them "that [the City] had circumvented its own procedures for abatement of public nuisances, and that the covered property would be demolished as a public nuisance, the City delegated the task of notifying lienholders … to the property owner." (*Id.*) Plaintiffs argue that, once these waivers were signed, the City demolished the subject structures without notice to interested lienholders, as would have been otherwise required under § 150.051 and, as a result, plaintiffs had no opportunity to contest whether the property really posed a "serious hazard to the health and safety of the community," as indicated in the waiver, or could be repaired to preserve its value. (*Id.* at 435.) Plaintiffs also assert that the City understood the potential harm to lienholders, because the City "contracted for the property owner 'to indemnify and hold the City harmless for any and all liability arising from the demolition of the real property first mentioned above.'" (*Id.*)

The City argues in opposition that Akron Codified Ordinances ("A.C.O.") § 150.051,[34] including its notice provision, applies "only when the Housing Inspector presents a report to the [HAB] that a premises is in violation of the City Housing Code, or if the [HAB] issues an order that the dwelling or premises must be demolished." (Def.Opp'n at 494 n.2.) When a property owner voluntarily agrees with the City that the property should be demolished, that "effectively ends the City's housing code enforcement efforts and any due process that attaches to those efforts." (*Id.*) The City argues that any failure to provide notice under the WDP was a failure of the owner of the property, not the City; therefore, absence of any notation of notice in the City's records is not dispositive of whether notice actually was provided. (*Id.* at 496.)[35]

Nothing in the waivers signed by property owners relieves the City of its duty to comply with procedural due process requirements. Nor is the City relieved of the requirements of A.C.O. 150.051(A)(1) vis-à-vis "all *other* persons having an interest in the premises[.]" The waiver does no more than serve as an acknowledgment that the property *owner* concedes that the property "is in such a state of disrepair as to create a serious hazard to the health and safety of the community, is uninhabitable and is economically infeasible to rehabilitate and therefore should be demolished." (*See e.g.*, Doc. No. 58-3 at 1013, Demolition Waiver for 1138 Big Falls Avenue.) Further, the contractual requirement that the property owner agrees "to notify each lien or leaseholder aforementioned of this action" (*id.*) does not relieve the City of its own notification duty.[36]

---

[34] *See* discussion, *infra*, at Section H for the full text of the ordinance.

[35] Plaintiffs devote the bulk of their 3-page reply brief to arguing that Morgan's affidavits in support of their briefs are adequate under Rule 56 and have evidentiary value for purposes of establishing facts. They do not specifically address the City's opposition arguments, except to declare that "[i]t is clear that the City tried through its [WDP] to shift the City's constitutionally mandated requirement to provide notice to unsophisticated property owners motivated to walk away from their property." (Pl.Reply at 728.)

[36] In fact, some (but not all) of the waiver forms in the record indicate that the property owner understands that "the municipality may also notify any lien or leaseholders in addition to [the owner's] notification." (Doc. No. 58-3 at 1013; *compare* Doc. 58-3 at 953, Demolition Waiver for 229 Arch Street.)

The City has argued that plaintiffs cannot show that the property owners failed to contact them; but that is not relevant to whether the City gave notice to plaintiffs. In fact, the City impliedly concedes that it did not do so. (*See* Diefendorf Aff. ¶ 11.) Finally, that the property owner contractually agrees to "hold the City of Akron harmless from any and all liability arising from demolition of the real property" (*id.*) is no more than an acknowledgment by the *owner* that he/she may be called upon to indemnify the City, should the City be successfully sued by anyone other than the owner. In that respect, plaintiffs' criticism of the City for having "made no attempt to add any of the Demo Waiver property owners to this action[]" (Pl.Mot. at 435) takes on meaning.

The Court concludes that the City failed in its duty to give notice of demolition and opportunity to be heard with respect to properties demolished under the WDP.[37] That said, the Court must determine whether the City can be held liable, a determination that requires application of *Monell*.

But before addressing *Monell*, the Court turns to the particular argument raised by the City that, for six of the WDP demolitions, the owners submitted the signed waivers prior to plaintiffs' purchase of the tax certificates. (*See* Def.Mot. at 374, Table of Properties.) The City states that these signed waiver forms are public records that are available upon request under Ohio's public record law. *See* Ohio Rev. Code § 149.43. Under Ohio Rev. Code § 5301.253(A),

> . . . Any notice or order of a court or of a housing or building authority of the state or a political subdivision that relates to a violation of the building or housing code of the state or any political subdivision and that appears on the public records of the issuing authority is notice to all subsequent purchasers, transferees, or any other persons who acquire any interest in the real property in which the violation exists and may be enforced against their interest in the real property without further notice or order to them.

---

[37] Of course, this conclusion applies only as to properties not time-barred.

Under this statute, the City argues, plaintiffs should have been aware that the six properties were already subject to demolition orders prior to their purchasing of the tax liens. Plaintiffs point to no authority that would require the City to continuously check for subsequent purchasers before moving forward with a demolition. (Def.Mot. at 374-75.)

Although the Court agrees with the City's argument, it discerns a problem with the City's table, in that it includes three properties that are barred by the two-year statute of limitations (214 Para Ave., 1531 Parkgate Ave., and 155 S. Portage Path)[38] and omits three other properties that should be included (481 Scheck St., 501 Gridley St., and 529 Hammel St.). The City's argument, therefore, properly applies to the following six properties:

| Address | Waiver Signed | Certificate Recorded |
|---------|---------------|----------------------|
| 1138 Big Falls Ave | 5/28/2013 | 11/14/2013 |
| 229 Arch St | 9/3/2013 & 10/8/2013 | 11/14/2013 |
| 459 Alexander St | 6/19/2013 | 11/14/2013 |
| 481 Scheck St | 5/6/2013 & 2/26/2013 | 11/14/2013 |
| 501 Gridley St | 10/31/2012 | 12/7/2012 |
| 529 Hammel St | 11/12/2013 | 11/14/2013 |

As to these six properties demolished through the WDP, the Court concludes that there was no procedural due process violation.

### b.     Applicability of *Monell*

To prove a *Monell* claim, plaintiffs must show (1) that they suffered a constitutional violation; and (2) that this deprivation of rights was the result of the implementation of an official municipal policy or custom. *Monell*, 436 U.S. at 690. The Court has decided that the record shows

---

[38] Of the 23 properties in this category, five were time-barred, including three listed in the City's table.

that plaintiffs were deprived of procedural due process with respect to some of the WDP demolitions. It must now decide whether plaintiffs can show that the WDP is a custom or policy of the City.

The City argues that the WDP is not part of its codified ordinances and that there is no evidence that a City policy-maker instituted the WDP, much less instituted it as a substitute for adherence to the City's handling of nuisance properties. (Def.Opp'n at 493.) It further argues that Diefendorf, who administers the WDP, is not a City policy-maker. Therefore, her use of the waiver form to implement the WDP cannot be attributed to the City. (*Id.* at 494.)

Notwithstanding its somewhat disingenuous arguments that a program of the magnitude of the WDP was not sanctioned (or ratified) by the City, as well as its suggestion that the WDP was being administered in some sort of rogue fashion by a non-policymaker using forms not approved by the City, all of the issues raised by the City present material factual disputes. Those are matters that cannot be decided on this record at this time.

### c.    Compensatory Damages

The City also argues that plaintiffs are not entitled to compensatory damages because the demolished properties were nuisances. (Def.Mot. at 375.) Specifically, the City asserts: "Plaintiffs cannot demonstrate that, had they received notice, that the outcome of the proceedings would have been different." (*Id.*) The City cites *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) for the proposition that "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." (*Id.*) (citation omitted). The City argues that, if plaintiffs prevail on their procedural due process claim, at most, they should be limited to nominal damages.

In their opposition, plaintiffs do not address the case law cited by the City. As is their pattern, they simply repeat their declaration that "they have suffered damages[.]" (Pl.Opp'n at 478.)

The *Farrar* case cited by the City relied upon and quoted *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978), which is better authority for the legal point that the City makes.[39] In *Carey*, students had been suspended from school without being afforded procedural due process. The question addressed by the Court was whether the court of appeals was correct in holding that, on remand, if the school could show that the students "would have been suspended even if a proper hearing had been held[,]" 435 U.S. at 260, they would "not be entitled to recover damages to compensate them for injuries caused by the suspensions[,]" because "the failure to accord procedural due process could not properly be viewed as the cause of the suspensions." *Id.* (citations omitted). The Supreme Court agreed with this reasoning. This is not to say that there could be no damages awarded, but the Court was upholding the principle, cited by the City here, that "the basic purpose of a § 1983 damages award should be to compensate persons for injuries *caused by the deprivation of constitutional rights*[.]" *Id.* at 255 (emphasis added).[40]

At this juncture, it cannot be known whether plaintiffs can prove that, had they received notice of the WDP demolitions that remain in the case, the outcome would have been different. What can be known is the legal principle that plaintiffs bear the burden of this proof.

---

[39] *Farrar* was a case addressing the question of whether a § 1983 plaintiff who had recovered only nominal damages could be considered a "prevailing party" for purposes of an award of attorney fees under 42 U.S.C. § 1988. The Supreme Court discussed the concept of damages, but it did so in reliance on *Carey*, which is more directly on point here.

[40] In other words, it cannot simply be presumed that plaintiffs' damages, if any, are the equivalent of the tax value of the demolished properties.

### 3.    Summary Conclusion on Procedural Due Process

With respect to all of the HAB demolitions, plaintiffs have failed to show a procedural due process violation by the City. With respect to the WDP demolitions, plaintiffs have established that the City did not give them notice and opportunity to be heard with respect to 12 of the properties, but it remains to be determined whether the City can be held liable for that constitutional violation under *Monell* and whether plaintiffs can establish any actual injury that is compensable.

### E.    Substantive Due Process (Count II)

In Count II of the FAC, plaintiffs allege that the City "failed to comply with local and state law and improperly determined that Plaintiffs' Properties be demolished and, in doing so, has deprived Plaintiffs of their constitutionally protected property rights and their right to substantive due process." (FAC ¶ 46.) They further allege that the City acted "arbitrarily and capriciously[,]" (*id.* ¶ 49), resulting in plaintiffs' "total loss of the use of the [p]roperties." (*Id.* ¶ 52.)

The City argues that it is entitled to summary judgment on Count II because plaintiffs are unable to establish that they have protected property interests that deserve substantive due process protection and, even if such interests exist, that plaintiffs have failed to establish that the City's actions were arbitrary and capricious. (Def.Mot. at 376.)

As to property interests, the City asserts that, under state law, tax lien certificates only "'… vest in the certificate holder the first lien previously held by the state … for the amount of taxes, assessments, interest, and penalty charged against a certificate parcel.'" (*Id.* at 377, quoting Ohio Rev. Code § 5721.35.) This entitles the tax certificate holder to initiate foreclosure proceedings, to obtain judgment following foreclosure, and to seek forfeiture of the certificate parcel following two unsuccessful attempts at sale. (*Id.*, citing statutes.) According to the City, there is no

constitutionally protected property interest beyond the rights provided by the relevant state statutes.

In any event, even if there is a property right, the City argues that plaintiffs cannot establish the requisite "arbitrary and capricious" behavior on the part of the City, which did no more than demolish property at the owner's request, upon confirming that the person requesting the demolition was the titled owner and that such owner confirmed that the property "is in such a state of disrepair as to created [sic] a serious hazard to the health and safety of the community, is uninhabitable and is economically infeasible to rehabilitate and therefore should be demolished." (*Id.* at 378, quoting Diefendorf Aff. Ex. A., Waiver Agreements.)

In opposition to these arguments by the City, plaintiffs simply make two conclusory statements: "The [p]laintiffs hold legitimate claim of entitlement within the meaning of the Fourteenth Amendment[;]" (Pl.Opp'n at 479), and "[w]ith respect to the Waiver Demolition [P]rogram, the City acted recklessly when it established a procedure designed, or implemented in a manner to circumvent its existing ordinances." (*Id.*.) In their own motion, plaintiffs argue that "[d]emolition of the covered properties was not taken pursuant to a valid condemnation order or the observance of any valid city ordinance." (Pl.Mot. at 439.) They claim the City "circumvented the established procedure for abating a public nuisance set by its local ordinance[,] . . .[and] excused itself of the requirements of notice prior to a demolition and delegated that responsibility to the owner of the vacant property. It also excused itself of making a factual finding concerning deficiencies and evaluating whether demolition was even warranted." (*Id.*)

The Sixth Circuit "has recognized two types of substantive due process violations: (1) official acts that are unreasonable and arbitrary and 'may not take place no matter what procedural protections accompany them,' and (2) official conduct that 'shocks the conscience.'" *Harris v.*

*City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (quoting *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir. 1985) (further citation omitted)). "Under this demanding standard, a plaintiff must demonstrate that the defendants acted in a manner offensive of community standards of decency and with a callous indifference to plaintiffs' rights, so to rise to the level of reckless or appalling behavior." *Embassy Realty Invest., Inc.*, 976 F. Supp. 2d at 940 (citation and internal quotation marks omitted).

As properly argued by the City, plaintiffs have failed to plead, much less prove, any substantive due process violation. Plaintiffs' substantive due process claims are based entirely on assertions that the City, in various ways, violated or circumvented its own ordinances and state law by failing to give notice and/or by improperly determining that the properties for which plaintiffs held tax certificates should be demolished and could not be repaired.[41] Despite the unsupported conclusory *allegations* that the City arbitrarily and capriciously exercised its powers (FAC ¶ 49; Pl.Opp'n at 479), plaintiffs' *submissions* on summary judgment fail to establish either of the two types of substantive due process violations recognized by *Harris*. In fact, plaintiffs' arguments go almost exclusively to the issue of *process* (i.e., notice and opportunity to be heard).

The City is entitled to summary judgment on Count II of plaintiffs' complaint.

## F.    Equal Protection (Count III)

In Count III of their complaint, plaintiffs assert that the City applied different standards to them than "to others who were similarly situated" (FAC ¶ 58), that their properties were "singled out" in a manner that constitutes "unlawful selective enforcement" of the City's ordinances (*id.* ¶

---

[41] Although plaintiffs assert that the City "excused itself of making a factual finding concerning deficiencies[,]" (Pl.Mot. at 439), the City submitted unrefuted records showing the deficiencies for every property (except, inexplicably, 76 W. Crosier Street). (*See* Doc. No. 60, Violations Binder.) These records belie any assertion that the City's actions were arbitrary and capricious.

59), that the application of the ordinances was "arbitrary and capricious" (*id.* ¶ 60), and that there was "no rational basis" for the City's actions (*id.* ¶ 61).

The complaint contains no allegation that plaintiffs are members of a protected class, nor could it. This is what is known as a "class-of-one" claim, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (citations omitted). "Those attacking the rationality of a government action under the rational basis standard bear the burden 'to negative every conceivable basis which might support it.'" *MSI Regency, Ltd. v. Jackson*, 433 F. App'x 420, 429 (6th Cir. 2011) (footnote omitted) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)).

The City argues that the affidavits of Forester and Diefendorf definitively establish that plaintiffs were treated no differently than anyone else. (Def.Mot. at 379.) According to the City, plaintiffs "cannot produce evidence that meaningfully contradicts these averments" and, therefore, it is entitled to summary judgment on Count III. (*Id.* at 380.) Plaintiffs fail to address the City's arguments in their opposition brief, nor do they move for summary judgment on their equal protection claim.

Based on the record before it, the Court concludes that plaintiffs have not met their burden with respect to establishing an equal protection claim. The City is entitled to summary judgment on Count III.

## G. Violation of Municipal Ordinances (Count VII)[42]

In this count of the complaint, plaintiffs raise three allegations regarding City ordinances.

First, plaintiffs allege that the City "failed to comply with Akron Municipal Ordinance 190.501 when it failed to evaluate the properties to determine the cost to abate the code violation prior to demolition." (FAC ¶ 85.) The City argues that A.C.O. § 190.501 does not contain any requirement that it determine the cost to abate the code violation prior to demolition. (Def.Mot. at 385.)

A.C.O. § 190.501 provides in its entirety as follows: "A building or structure that may or has become an unsafe building or structure, shall, unless made safe and secure, be taken down and removed when so ordered by the Superintendent or the Fire Chief." The City is correct that there is no requirement that it determine the cost to abate the code violations. With respect to this alleged code violation, the City is entitled to summary judgment.

Second, plaintiffs allege that the City "failed to comply with Akron Municipal Ordinance 190.502 when it failed to post the properties." (FAC ¶ 86.) The City argues that the sole purpose of the notice requirement of the ordinance is to direct all individuals to vacate the structure, not to provide notice of imminent demolition.

A.C.O. § 190.502(B) provides: "Posting. When an unsafe building or structure poses a risk of collapse of any part, or is unsafe to enter due to structural deficiencies, the Superintendent shall post each building or structure entrance and unsafe area with notice that the building structure is unsafe and should be vacated as necessary." Aside from the fact that notices were posted, as

---

[42] Plaintiffs have not directly addressed this section of the City's motion in their opposition brief, other than to assert (in the context of their argument addressing the taking claim in Count V), that whether the properties could not be economically repaired is a question of fact. (Pl.Opp'n at 467.) The Court considers this segment of the City's motion to be unopposed, but will briefly address it nonetheless.

attested to by Forester, the City is correct as to the purpose of this ordinance. Plaintiffs have made no argument that this ordinance provides for a private right of action, even if the City failed to post a notice to vacate. With respect to this alleged code violation, the City is entitled to summary judgment.

Finally, plaintiffs allege that the City "failed to comply with Akron Municipal Ordinance 190.109 when it failed to list specific violations and provide a reasonable time to resolve any issues prior to demolition." (FAC ¶ 87.) The City argues that plaintiffs have no standing to challenge notices under this ordinance and, in any event, can point to no notice that failed to comply with the ordinance's provisions.

A.C.O. § 190.109 provides, in relevant part:

A. Written Notice or Order. Whenever the Superintendent is satisfied that a building or structure, or any work in connection therewith, the erection, construction, alteration, execution, repair or demolition of which is regulated, permitted, or forbidden by this building code, is being erected, constructed, altered, or repaired in violation of this building code, or in violation of a detailed statement or plan submitted and approved, or a permit or certificate issued under this building code, he shall serve a written notice of violation and order to comply upon the property owner or person responsible for or involved in the work directing the discontinuance of the illegal action and the remedying of the condition.

The notice and order shall:

1. Be put in writing on an appropriate form as the Superintendent shall determine;

2. Include a list of violations, refer to the sections and divisions violated and order remedial action which will effect compliance with the provisions of this building code;

3. Specify a reasonable time within which to comply; and

4. Be served on the responsible person personally, or by certified mail and regular mail to the person's residence, regular place of business or last known address. If the certified or regular mail is returned undelivered, a

> copy shall be posted in a conspicuous place in or on the person's residence, regular place of business, last known address, or the building affected.
>
> * * *

The ordinance requires that notice be given to the "property owner or person responsible for or involved in the work[.]" Plaintiffs do not qualify for notice and, therefore, have no standing to assert whatever claim might be available under this ordinance. With respect to this alleged code violation, the City is entitled to summary judgment.

The City is entitled to summary judgment on all of Count VII.

## H.      Unconstitutional Exercise of Home Rule (Count IX)

In this count of the complaint, plaintiffs allege that, "[u]nlike [Ohio Rev. Code § 715.26], the Akron Codified Ordinance does not expressly safeguard a lienholder's property interest by allowing such lienholder to contract for repair of an insecure, unsafe or structurally-defective condition in a property to avoid its demolition." (FAC ¶ 97.) As a result, plaintiffs claim to "have been denied important rights designed to protect its [sic] interests" in the various properties. (*Id.* ¶ 99.)

The Ohio Constitution provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, *as are not in conflict with general laws*." Ohio Const. art. XVIII, § 3 (emphasis added). The Supreme Court of Ohio applies "a three-part test to evaluate claims that a municipality has exceeded its powers under the Home Rule Amendment." *Mendenhall v. City of Akron*, 881 N.E.2d 255, 260 (Ohio 2008). A court should ask "whether (1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law,

and (3) the ordinance is in conflict with the statute." *Id.* (reordering the three parts originally set forth in *Canton v. State*, 766 N.E.2d 963 (Ohio 2002)).

The City moves for summary judgment, arguing only that plaintiffs fail to identify any conflict between a City ordinance and the general law of Ohio. In opposition to the City's motion, plaintiffs argue that Ohio Rev. Code § 715.26(B), a general law of Ohio, "provides lienholders the right to contract for repairs to prevent demolition that [A.C.O. § 150.051] withholds." (Pl.Opp'n at 480.)

A.C.O. § 150.051, captioned "Repair, vacation and demolition -- Procedure -- Remedy of City for noncompliance," provides as follows:

A.   On receipt of a report of the Housing Inspector that a premises is in violation of this chapter, the Board shall:

1.   Give written notice to the owner and all other persons having an interest in the premises, as shown by the land records of Summit County, to appear before the Board on the date specified in the notice;

2.   Hold a hearing and hear testimony of the Housing Inspector, citizens or the owner of the dwelling or premises and all other persons having an interest in the premises, as shown by the land records of Summit County, offered relative to the fitness of the building for human habitation or use;

3.   Make written findings of fact from the testimony offered as to whether the dwelling or premises is unfit for human habitation or use; and

4.   Issue an order based upon the findings of fact made, commanding, if proper, that the dwelling or premises must be demolished. This order shall be served on all persons specified in subsection 1 of this section. The order shall state that the dwelling or premises will be demolished by the city, and that there is a right to appeal the Board's order pursuant to Revised Code Chapter 2506.

B.   The Board may grant a thirty to ninety day extension to a property owner or interested party for compliance with the provisions of this chapter only upon a showing of satisfactory assurance to the Board that the property owner or interested party has the financial and practical capability of initiating and completing the required repairs to the premises within the time

extended. After one thirty to ninety day extension has been granted, additional thirty to ninety day extensions for repairs may be granted only upon a showing to the Board of substantial progress toward completion of repairs at the owner's premises. In the event of noncompliance, to any extent, or partial repairs to the premises by the owner, the Board may at any time declare the premises to be a public nuisance and declare that the premises be razed.

C.    The Board may order the dwelling or premises to be repaired, vacated, or demolished. The Board shall advise the Director of Planning and Urban Development as to the particulars involved, so the appropriate action may be instituted to cause the dwelling or premises to be demolished. Should the owner fail, neglect, or refuse to pay the costs so incurred, the costs shall be paid out of the City treasury on the certificate of the Director of Planning and Urban Development, and the Director of Finance shall then certify the amount so paid to the Fiscal Officer of Summit County. The Fiscal Officer shall enter the amount on the tax duplicate of the County as a special assessment against the real estate on which the dwelling or premises requiring the work is or was situated, and the assessment shall be collected as other taxes and assessments and, when collected, shall be refunded to the city.

D.    When a dwelling or premises can reasonably be repaired so that it will no longer exist in violation of any of the provisions of this chapter, it shall be ordered repaired;

E.    When a dwelling or premises is in such condition as to make it dangerous to the health, morals, safety, or general welfare of its occupants, it shall be ordered vacated;

F.    When the board determines the dwelling or premises is a public nuisance, and in all cases where it cannot be repaired, or where the owner refuses or fails to repair the dwelling so that it will no longer be in violation of any of the terms of this chapter, it shall be demolished. In all cases where it is a fire hazard, existing or erected in violation of any of the terms of this chapter or any ordinances of the city, it shall be demolished. Penalty, see § 150.99.

Ohio Rev. Code § 715.26(B) provides that any municipal corporation may:

Provide for the inspection of buildings or other structures and for the removal and repair of insecure, unsafe, or structurally defective buildings or other structures under this section or section 715.261 of the Revised Code. At least thirty days prior to the removal or repair of any insecure, unsafe, or structurally defective building, the municipal corporation, or its agent pursuant to an agreement entered into under division (E) of section 715.261 of the Revised Code, shall give notice by certified mail of its intention with respect to such removal or repair to the holders of legal or

equitable liens of record upon the real property on which such building is located and to owners of record of such property. The owners of record of such property or the holders of liens of record upon such property may enter into an agreement with the municipal corporation, or a county land reutilization corporation organized under Chapter 1724. of the Revised Code that is serving as the municipal corporation's agent, to perform the removal or repair of the insecure, unsafe, or structurally defective building. If an emergency exists, as determined by the municipal corporation, notice may be given other than by certified mail and less than thirty days prior to such removal or repair. If for any reason notice is not given, the lien provided for in section 715. 261 of the Revised Code as a result of such removal or repair is valid but shall be subordinate to any liens of prior record. If notice is provided in accordance with this section, a lien under section 715.261 of the Revised Code for such removal or repair is effective on the date the municipal corporation or county land reutilization corporation incurred expenses in such removal or repair.

As properly argued by the City, there is no conflict between the ordinance and the statute. In other words, the statute does not permit what the ordinance prohibits, nor does the statute prohibit what the ordinance permits. *Mendenhall*, 881 N.E.2d at 263 ("No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice versa.") (quoting *Village of Struthers v. Sokol*, 140 N.E. 519, 521 (Ohio 1923)).

Plaintiffs misinterpret the statute as granting lienholders a *right* to enter into a contract with the City to repair the property to avoid demolition. This is incorrect. "When a statute is unambiguous, a court must apply it as written." *Armstrong v. John R. Jurgensen Co.*, 990 N.E.2d 568, 571 (Ohio 2013) (citation omitted). The statute is written in non-mandatory language -- the owners or lienholders "*may* enter into an agreement" with the City. Therefore, any right to repair is contingent upon the City *agreeing* to permit repairs. Ohio Rev. Code § 715.26(B) *permits* lienholders to try to enter into an agreement with the City for repair of the property prior to demolition, and A.C.O. § 150.051 does not *prohibit* that.

Plaintiffs have failed to establish any unconstitutional exercise of home rule by the City. Therefore, the City is entitled to summary judgment on Count IX.

## I.      Unjust Enrichment (Count X)

In Count X, plaintiffs allege that the City, through payments made by dismissed defendant Summit County, "received a benefit" from plaintiffs' purchase of the municipal tax liens. (FAC ¶ 102.) According to plaintiffs, the City's retention of this benefit "given the loss of Plaintiffs' economic interest in the properties[,]" is unjust. (FAC ¶ 104.)

In *Hummel v. Hummel*, 14 N.E.2d 923, 927 (Ohio 1938), the Ohio Supreme Court held that "unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." "A claim for unjust enrichment, or quantum meruit, is a contract implied in law, or a quasi-contract." *Donald Harris Law Firm v. Dwight-Killian*, 853 N.E.2d 364, 367 (Ohio Ct. App. 2006) (citing *Hummel, supra*).

"Under this type of contract, civil liability 'arises out of the obligation cast by law upon a person in receipt of benefits which he [or she] is not justly entitled to retain' without compensating the individual who conferred the benefits." *Fisk Alloy Wire, Inc. v. Hemsath*, No. L-05-1097, 2005 WL 3557392, at *12 (Ohio Ct. App. Dec. 30, 2005) (alteration in original) (quoting *Hummel*, 14 N.E.2d at 925-26). A plaintiff must establish the following three elements to prove unjust enrichment: "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Miller v. Keybank Nat'l Assoc.*, No. 86327, 2006 WL 871621, at *7 (Ohio Ct. App. Apr. 6, 2006) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

The City moves for summary judgment on this claim, arguing that plaintiffs can point to no evidence that the City has improperly or unjustly retained any benefit conferred by plaintiffs. (Def.Mot. at 389.) In opposition, plaintiffs simply declare that they "have submitted testimony that the County of Summit made payments to Akron out of proceeds it received directly from payments made by Plaintiffs to Summit County to purchase tax lien certificates." (Pl.Opp'n at 481-82.) Unfortunately, plaintiffs do not cite to any such evidence in the summary judgment record before the Court. Perhaps their reference is to the Morgan affidavit attached to their opposition. Morgan states that he has "reviewed the [online] Ohio County Treasurer's Manual … which describes the process of settlement whereby funds collected in real properties [sic] taxes are dispersed to municipalities." (Morgan Aff. 2 ¶ 3.) He then asserts, in a conclusory manner, that "Woods Cove interest was derived through the purchase of delinquent property taxes whereby a portion of the funds received from Woods Cove were [sic] subsequently transferred to the City of Akron." (*Id.* ¶ 4.) Morgan supplies nothing in his affidavit to support his assertion that he has "personal knowledge" of the matters contained in the affidavit. (*Id.* ¶ 1.) At best, he can say he personally conducted some research of the Summit County Fiscal Office records. He cannot attest that he has first-hand, personal knowledge of payments made to (i.e., benefits conferred on) the City. Nor can he attest that, if the City received such benefits, it would be unjust for it to retain them.

This claim fails as a matter of law. The City is entitled to summary judgment on Count X.

## J.      Injunction (Count XI)

In Count XI of the complaint, plaintiffs seek an injunction permanently preventing the City from "taking any action to demolish properties encumbered by the tax lien certificates or direct ownership of Plaintiffs without notice and opportunity to provide adequate assurances of rehabilitation." (FAC ¶ 108.)

"An injunction is an extraordinary remedy in equity where there is no adequate remedy available at law. It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot." *State ex rel. Morrison v. Beck Energy Corp.*, 989 N.E.2d 85, 90 (Ohio Ct. App. 2013) (internal quotation marks and citation omitted).

Notably, although an injunction may be a possible remedy, it is not a separate claim. *Hitachi Med. Sys. Am., Inc. v. Branch*, No. 5:09-CV-1575, 2010 WL 816344, at *11 (N.D. Ohio Mar. 4, 2010).

Therefore, to the extent Count XI purports to be a separate claim or cause of action, it is dismissed, without prejudice to the availability of injunction as a remedy, should that prove appropriate.

### K.       1141 Laurel Avenue

The City argues that the property located at 1141 Laurel Avenue is an outlier because it was not demolished by the City. (Def.Mot. at 364, citing Forester Aff. 1 ¶ 14 and Diefendorf Aff. ¶ 10.) In opposition, plaintiffs argue that this is a question of fact. Quoting from an unidentified source, plaintiffs claim that the City previously proposed to stipulate that it had demolished the property (Pl.Opp'n at 456), and should not now be permitted to take a different position.

Plaintiffs' unsupported quotation is not Rule 56 evidence. Further, the records submitted by the City regarding this property show that, following a fire, the property was "self razed." (Doc. No. 58-2 at 901.)

The City is entitled to summary judgment with respect to this property.

# IV. CONCLUSION

For the reasons set forth herein, the plaintiffs' motion for partial summary judgment (Doc. No. 49) is denied, and the City's motion for summary judgment (Doc. No. 46) is granted in part and denied in part, as follows:

The City is entitled to summary judgment as to all of Counts II, III, V, VII, IX, and X. Further, Counts IV, VI, and VIII are dismissed, having been abandoned by plaintiffs, and Count XI is dismissed for failure to state a separate claim, without prejudice to injunction as a possible remedy.

As to the § 1983 procedural due process claims in Count I, the Court finds there are questions of fact relating to only the following twelve (12) properties:

| | |
|---|---|
| 1449 Hartford Avenue | 58 Belvidere Way |
| 1610 Little Street | 598 High Grove Boulevard |
| 1926 SW 14th Street | 664 Inman Street |
| 484 Inman Street | 76 W. Crosier Street |
| 532 Inman Street | 761 Lovers Lane |
| 56 Oakdale Avenue | 897 Keeney Street |

As to all other properties, the City is entitled to summary judgment.

**IT IS SO ORDERED**.

Dated: August 29, 2018

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**